IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HERIBERTO TORRES,** : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | NO. 10-4627 |
| : | |
| **WAL-MART STORES, INC.,** *et al.,* : | |
| Defendants. : | |
| : | |

## MEMORANDUM OPINION AND ORDER

Rufe, J.                                                                                                September 13, 2012

In January 2010, Plaintiff, Heriberto Torres, was hired by Manpower Associates, a temporary employment agency, and assigned by Manpower to the Wal-Mart Pottsville Distribution Facility ("Wal-Mart Facility"), where Rehrig Pacific Company and Rehrig Penn Logistics, Inc. ("Moving Defendants" or "Rehrig") supplied, managed, and distributed pallets and pallet systems. Rehrig owned and maintained various pieces of equipment used to move and stack pallets at the Wal-Mart Facility, including a PE4500 stand-up power jack ("fork lift"). On January 31, 2010, a Rehrig supervisor directed Plaintiff to retrieve pallets in the Wal-Mart Facility using the fork lift. While he was operating the fork lift, it slid on a wet floor, causing Plaintiff to lose control. Plaintiff stepped off the power jack to avoid a head-on collision with an I-beam, and in doing so suffered severe injuries to his right leg and ankle. He has filed negligence claims against Wal-Mart and Rehrig. Rehrig has filed a Motion for Summary Judgment, arguing that under the "borrowed servant" doctrine, Plaintiff was an employee of Rehrig at the time of his accident and therefore, Pennsylvania's Workers' Compensation Act[1] (the "Act") provides the sole remedy for Plaintiff's work related injuries, and his negligence

---

[1] 77 P.S. § 1 *et seq.*

action against Rehrig must be dismissed. Plaintiff argues that he remained the employee of Manpower and therefore, he is entitled to pursue this negligence suit against Rehrig. For the reasons set forth below, the Court will grant Rehrig's Motion.

## I. STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[3] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[4] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[6] Further, a court may not weigh the evidence or make credibility determinations.[7] Nevertheless, the party opposing summary judgment must support each essential element of the opposition

---

[2] Fed. R. Civ. P. 56(a), (c)(1).

[3] Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

[4] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[5] Id.

[6] Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

[7] Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

with concrete evidence in the record.[8]  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[10]  Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[11]

## II.  DISCUSSION

As a preliminary matter, the Court notes that Rehrig failed to comply with the Court's Policies and Procedures, as it did not meet and confer with Plaintiff and submit a Statement of Stipulated Material Facts.[12]  Nevertheless, the Court will address the merits of the Motion.

Under Pennsylvania's Workers' Compensation Act, an employer's liability for workplace injuries is limited to claims under the Act.[13]  The Court must determine whether Plaintiff was "transferred to the service of [Rehrig] in such a way that he becomes, for the time being and in the particular service which he is engaged to perform, an employee of that person."[14]

---

[8] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

[9] Anderson, 477 U.S. at 249-50 (citations omitted).

[10] Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

[11] Celotex, 477 U.S. at 322; Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

[12] The Court's required procedure with regard to Motions for Summary Judgment was attached to the case management order in this case (see Docket No. 11), and is also available on the Court's website and in the publication Eastern District of Pennsylvania Federal Practice Rules.

[13] 77 P.S. § 481.  Manpower, not Rehrig, provided Workers' Compensation Benefits to Plaintiff, pursuant to the terms of the Staffing Services Agreement.  However, this is not determinative of the "borrowed servant" issue.

[14] Mature v. Angelo, 97 A.2d 59, 60 (Pa. 1953) (citations omitted).

The Pennsylvania Supreme Court has articulated a test for determining whether an employee loaned by one company (here Manpower) to another (Rehrig) becomes the employee of the borrower under this Act: the employer is the company which has the right to control both the work to be done *and* the manner of performance.[15]  The employer need not actually exercise its right to control the manner of performance.[16]  "A servant is the employee of the person who has the *right* of controlling the manner of his performance of work, irrespective of whether he actually *exercises* that control or not."[17]

In its briefs, Rehrig relies heavily on a Staffing Services Agreement between Manpower and Rehrig, which provides:

> Supervision of the Work.  Notwithstanding the presence of any Manpower personnel at a facility where Assigned Employees are placed under this Agreement, Client [Rehrig] agrees to supervise and control the work, premises, processes and systems to be performed by Assigned Employees and to review and approve the corresponding work product. . . . In the event Client is dissatisfied with the work product produced in whole or in part by any Assigned Employee, Client may request, and its sole remedy will be, the removal of such Assigned Employee . . . .[18]

It is clear from the terms of this agreement that Manpower assigned to Rehrig the right to supervise and control the manner in which Plaintiff and other assigned employees completed their assigned tasks, and the right to have assigned employees removed from the Rehrig assignment if their work was unsatisfactory.  Plaintiff does not dispute the existence, validity or

---

[15] JFC Temps, Inc. v. Workmen's Compensation Appeal Bd., 680 A.2d 862, 864 (Pa. 1996);  Williams v. Delta Truck Body Co., Inc., 892 F.2d 327, 330 (3d Cir. 1989).

[16] Williams, 892 F.2d at 330.

[17] Mature, 97 A.2d at 60-61 (citations omitted).

[18] Staffing Services Agreement 1.

content of this agreement, and in fact attaches it to his own brief.

Plaintiff points to numerous factors which weigh in favor of finding that Manpower, in fact, controlled the manner in which he fulfilled his assignments: Manpower hired him, provided a safety orientation, and could discipline him or terminate his employment. More importantly, he points to the fact that Manpower actually maintained a full-time Team Leader on-site in the Wal-Mart facility. However, the terms of the Staff Services Agreement acknowledges Manpower's duty to recruit and assign employees, its retained right to discipline assigned employees, and the presence of the Team Leader at Rehrig's work site, and yet clearly assigns to Rehrig the right to control the manner in which assigned employees perform their work assignments.[19] As the Pennsylvania Supreme Court has held in the context of a temporary staffing case, it is the <u>right</u> to control the manner of performance that governs, and not whether a given employer actually exerts control,[20] and the Staffing Services Agreement expressly transfers to Rehrig the right to control Plaintiff's manner of work performance.

The right to control the manner of performance "must be meaningful, however."[21] Plaintiff argues that it was not, and notes that Manpower strictly prohibited Rehrig from directing assigned employees to operate fork lifts. However, in support of his contention that Manpower imposed such a prohibition, Plaintiff points only to the Staffing Services Agreement, which he misreads, and the deposition testimony of Manpower Branch Manager Irene Kadziela, which is not consistent with his position.

---

[19] <u>Id.</u>

[20] <u>JFC Temps</u>, 680 A.2d at 864.

[21] <u>Williams</u>, 892 F.2d at 330.

The Staffing Services Agreement permits assigned employees to operate vehicles only "as is strictly required by the job description provided to Manpower."[22]  Plaintiff was assigned to Rehrig to work as an Industrial Laborer.  The job description for this position listed "[m]oving, sorting, and inspecting pallets.  Forklift operation and general labor functions."[23]  Manpower Branch Manager Irene Kadziela testified that Manpower had a verbal understanding with Rehrig that employees assigned to the Wal-Mart Facility by Manpower should not operate fork lifts or other equipment without training, and that Rehrig would be responsible for providing training and documenting that training on Manpower forms.[24]  Plaintiff does not contradict this testimony, and, in fact, Plaintiff testified that after telling a Rehrig employee he had experience driving a fork lift, and had been tested and certified by another employer, he was trained and tested on a forklift by Rehrig.  Specifically, a Rehrig employee spent about 15 to 20 minutes demonstrating "how to go up, to press the button to go up, down, the horn, the break" and how to accelerate.[25]  The Rehrig employee then observed Plaintiff operating the power jack, including maneuvering through a set of traffic cones and driving down one side of the traffic cones, turning, and driving back on the other side, for approximately ten minutes.[26]  Thereafter, Plaintiff was permitted to operate a forklift in the Wal-Mart Facility.[27]

---

[22] Staffing Services Agreement at 1.

[23] Id. at 6.

[24] Kadziela Dep. at 12-13, 18-19, 61.

[25] Torres Dep. at 39.

[26] Torres Dep. at 38, 67, 70.

[27] Plaintiff disputes the adequacy of the training and testing process, but this dispute goes to negligence and is not material to the issue presently before the Court– i.e. whether Rehrig had the right to control and direct Plaintiff's manner of performance.

6

The Court finds the fact that Rehrig provided this forklift training and testing, and thereafter assigned Plaintiff to operate a forklift at the job site, compels a finding that Rehrig, and not Manpower, controlled the manner in which Plaintiff completed his work at the Wal-Mart Facility.[28]

### III.     CONCLUSION

"[W]hen the facts are undisputed, the determination of who is the employee's employer is one of law, but when the facts are disputed, the determination is one of fact."[29]  Here, the parties do not dispute the existence or content of the Staffing Services Agreement, and both parties rely upon it in their briefs.  While the adequacy of Rehrig's training and testing of Plaintiff on the fork lift before assigning him to use it is disputed, this dispute does not affect Plaintiff's own testimony regarding the training and testing provided, which establishes that Rehrig did perform *some* training and testing and then directed Plaintiff to complete tasks using the fork lift.  From these undisputed facts, the Court concludes, as a matter of law, that Rehrig was Plaintiff's employer.  Accordingly, the Pennsylvania Workers' Compensation law provides the only remedy for Plaintiff's negligence claims against Rehrig.

An appropriate Order follows.

---

[28] See Williams, 892 F.2d at 330-31 (finding that factors such as providing job training weigh in favor of finding a party controlled the manner in which an employee's work was performed).

[29] Id. at 330.